UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sean Michael MCANALLY,<br><br>Plaintiff,<br><br>v.<br><br>Nancy A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 3:18-cv-02272-GPC-RNB<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION; GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 12, 15, 20.]** |

On September 28, 2018, Plaintiff Sean Michael Mcanally ("Plaintiff") filed this action seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits. (ECF No. 1.) The Administrative Law Judge ("ALJ") below found Plaintiff was not disabled at Step 5 of the five-step sequential evaluation. (Administrative Record ("AR") at 61–79.) Plaintiff now challenges that decision for lack of substantial evidence. (ECF No. 12.)

Based on the facts and applicable law, the Court **REMANDS** this matter to the ALJ for further administrative proceedings.

**I.  Background**

1

### A. Procedural Background

On July 7, 2014, Plaintiff filed an application for disability insurance benefits under the Social Security Act ("SSA"), alleging a disability beginning May 17, 2013. (AR 257–58.) On February 20, 2015, Plaintiff's claims were denied. (AR 193–96). On May 29, 2015, Plaintiff's claims were again denied upon reconsideration. (AR 200–05.)

On June 12, 2015, Plaintiff requested an administrative hearing. (AR 206–07.) A hearing was held on February 1, 2017. (AR 102–65.) A medical expert, a vocational expert and Plaintiff testified at the hearing. (AR 102–65.) On April 19, 2017, the ALJ issued a written decision finding that Plaintiff had not been under a disability. (AR 64–75.) On May 22, 2018, the Appeals Council denied Plaintiff's request for review. (AR 7–13.)

On September 28, 2018, Plaintiff commenced the instant action seeking judicial review of the Commissioner's decision. (ECF No. 1.) On December 17, 2018, Defendant answered and lodged the administrative record. (ECF Nos. 9, 10.) On February 13, 2019, Plaintiff moved for summary judgment, seeking reversal of Defendant's denial of disability benefits or, alternatively, remand for further administrative proceedings. (ECF No. 12.) On April 19, 2019, the Commissioner cross–moved for summary judgment and responded to Plaintiff's motion. (ECF. Nos. 15, 16.) On April 30, 2019, Plaintiff filed a reply and an opposition to Defendant's cross motion. (ECF No. 17.) On May 10, 2019, Defendant filed a sur–reply in support of Defendant's motion. (ECF No. 18.) On June 11, 2019, Magistrate Judge Robert N. Block issued a R&R that the case be remanded for further administrative proceedings. (ECF No. 20.) No objections have been filed.

### B. Legal Background

Under the SSA, a Plaintiff has a "disability" if he or she is unable "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a Plaintiff is disabled, the ALJ employs a

five–step sequential evaluation. 20 C.F.R. § 416.920(a)(4); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). "If the ALJ determines that a claimant is either disabled or not disabled at any step in the process, the ALJ does not continue on to the next step." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

This process requires the ALJ to determine: (1) whether the Plaintiff is "doing substantial gainful activity"; (2) whether the Plaintiff has a "severe medically determinable physical or mental impairment" or combination of impairments, which significantly limits the Plaintiff's physical or mental ability to do basic work and that has lasted for more than twelve months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the Plaintiff's residual functional capacity ("RFC"), the Plaintiff can still do his or her "past relevant work"; and (5) whether the Plaintiff "can make an adjustment to other work." 20 C.F.R. § 416.920.

### C. Factual Background

Plaintiff was born on May 17, 1966. (AR 132.) He was forty–seven years old at the onset of the alleged disability and fifty at the time of the hearing. (*Id.*) Plaintiff has at least a high school education and can communicate in English. (AR 74, 133.) Plaintiff has worked as a business development manager, insurance salesman, and vice president of sales. (AR 153.) Plaintiff claims that he has been disabled since May 17, 2013, due to carpal tunnel syndrome disease, epicondylitis, ringing in ears, memory loss, and not being able to concentrate due to depression and suicidal thoughts. (AR 283, 295.)

#### i. Medical Evidence[1]

The medical evidence here was primarily presented by four individuals: (1) Dr. Martin A. Magy, a psychologist who assessed Plaintiff for workers' compensation; (2) Dr. Winifred Hui–Lin Lee, Plaintiff's primary care doctor; (3) Dr. Nathan Miller, Plaintiff's physician; and (4) Ms. Recheal Stewart Brown, licensed clinical social worker.

---

[1] Because Claimant's argument pertains to this mental RFC, the Court does not examine Claimant's physical medical evidence.

### 1. Dr. Martin A. Magy (Workers' Compensation Psychologist)

On June 19, 2015, Plaintiff saw Dr. Magy, a Ph.D. clinical psychologist, for his workers' compensation claim. (AR 270–79.) As part of Plaintiff's "Mental Status Examination," Dr. Magy observed:

> Mr. McAnally is reportedly 6'3" tall and weighs 185 lb. He is a casually dressed gentleman who wears glasses. His presentation is mildly odd. He is apparently extremely intelligent but his thought processes are circumstantial and tangential. He is very detailed in his description of relatively minor events. He clearly enjoys the opportunity to share his frustrations. Sleep is reportedly to be limited to less than four hours per night and is typically nonrestorative. Appetite is diminished. Energy is low. Libido is low. Socially, he is isolated and is more irritable with diminished frustration tolerance. He is becoming increasingly hopeless and helpless. His mood is anxious and agitated with underlying resentment and depression. Memory and concentration are reportedly poor. He has suicidal ideation but no current plan or intent. He denies auditory or visual hallucinations but states "I hear things I shouldn't." He denies homicidal ideation. He is anhedonic.

(AR 273.) Dr. Magy diagnosed Plaintiff as having "Pain Disorder Associated with both a General Medical Condition and Psychological Factors (DSM-IV: 307.89)," ruled out a "typical Depressive Disorder, NOS (DSM-IV: 311.00)," and recommended Cognitive Behavioral Therapy training. (AR 273.) Dr. Magy requested authorization to perform two psychological tests, the Minnesota Multiphasic Personality Inventory (MMPI–2) and the Millon Clinical Multiaxial Inventory–2 (MCMI–2). (AR 284.) Dr. Magy reasoned that those tests were "important so as to delineate the level of depression and anxiety and to examine the personality factors that may impede recovery." (AR 274.)

### 2. Dr. Winifred Hui–Lin Lee (Primary Care Doctor)

On December 10, 2014, Dr. Lee assessed the Plaintiff and found him to be "anxious," to have a "depressed mood," to exhibit "tangential thought[s]," and to be lacking "suicidal ideation [or] plans." (AR 427–30, 451–54.) Dr. Lee conclude Plaintiff was "[p]ositive for depression" as well as "nervous/anxious" enough to merit a further psychological assessment. (*Id.*)

On January 5, 2015, Dr. Lee found Plaintiff's symptoms were consistent with "severe depression" based, in part, on his score of more than 20 points on the personal history questionnaire type 9 ("PHQ 9"), a depression screening tool.[2] (AR 435, 497–98.) Dr. Lee "advised initiation of Celexa and self–referral to psychiatry as much of his depression also stems from lack of ability to work . . ." (AR 435.)

On February 24, 2015, Dr. Lee "HIGHLY" recommended that Plaintiff self-refer to psychiatry, discontinue Celexa, and take an alternate antidepressant, Zoloft, if Celexa was not working. (AR 536–38.)

On March 21, 2015, Dr. Lee advised Plaintiff to schedule an appointment with psychiatry, noting that Plaintiff "may benefit from seeing a psychologist / psychiatrist for [his] ongoing depression." (AR 542.)

On May 28, 2015, Plaintiff saw Dr. Lee with complaints of generalized body pains. (AR 553.) Dr. Lee reported that Plaintiff was alert, well developed, well nourished, and in no distress. (AR 555.)

On June 15, 2016, Plaintiff saw Dr. Lee in order to review his medications and asked to stop his prescriptions because he could no longer afford them. (AR 1017–24.) Dr. Lee assessed Plaintiff as having normal memory, normal judgment, not appearing anxious, nor expressing homicidal ideation, but nonetheless exhibiting a depressed mood and apathy. (AR 1019.) Dr. Lee instructed Plaintiff on a six-week tapering schedule and diagnosed him as having a "major depressive disorder, recurrent episode, in partial remission." (AR 1020–21.)

---

[2] The PHQ-9 is a brief, industry-standard assessment tool for depression, and has been found to be a "reliable and valid measure of depression severity." See Kurt Kroenke, MD, et al., *The Validity of a Brief Depression Severity Measure*, 16 J. GENERAL INTERNAL MEDICINE 606, 606 (2001), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/; see also Courtney Beard, PhD, et al., *Validation of the PHQ-9 in a Psychiatric Sample*, 193 J. AFFECTIVE DISORDERS 267 (2016), available at https://www.sciencedirect.com/science/article/abs/pii/S0165032715310272 ("This first comprehensive validation of the PHQ-9 in a large, psychiatric sample supported its use as a severity measure and as a measure of treatment outcome. It also performed well as a screener for a current depressive episode using a higher cut-off than previously recommended for primary care samples.")

### 3. Dr. Nathan Miller (Treating Physician for Physical Injury)

Dr. Nathan Miller met with Plaintiff more than one dozen times from January 19, 2015 to May 2, 2016 to address his physical injuries, including his shoulder surgery, elbow pain, and carpal tunnel syndrome. (AR 938–89.) The psychiatric portions of Dr. Miller's progress notes consistently indicate Plaintiff's "affect [was] flat with previous, not active suicidal ideation, alert and awake and no signs of significant sedation." (*Id.*)

Dr. Miller further evaluated Plaintiff's mental impairment in more detail twice. On June 16, 2015, Dr. Miller "requested authorization for cognitive behavioral therapy evaluation and four sessions" to help address Plaintiff's "delayed recovery" and "chronic pain" following "his work related injury." (AR 972, 976.) Then, on May 2, 2016, Dr. Miller noted that, "[a]t this point the patient needs psychiatric care as soon as possible. This should include psychiatric medication management and psychological management." (AR 940.) Dr. Miller then referred Plaintiff to "Psych Care" in four weeks. (AR 940.)

### 4. Ms. Recheal Stewart Brown (Licensed Clinical Social Worker)

On February 17, 2017, Plaintiff saw LCSW Recheal Stewart Brown at PsyCare for a psychological evaluation. (AR 96–101.) Per her mental status examination, LCSW Brown indicated Plaintiff suffered from an anxious mood, derailed thought process, impaired memory, impaired judgment, and impaired impulse control, though he had no hallucinations or delusions. (AR 100.) LCSW Brown then diagnosed Plaintiff with persistent depressive disorder, noting that he experienced various mental health issues, including "[l]ow mood most of the day, physical complaints, overeating, difficulty sleeping, poor self-image, poor concertation, memory difficulty, hopelessness, anger outburst." (AR 101.) LCSW Brown estimated Plaintiff would need six to twelve months of treatment and recommended he return after one to two weeks. (AR 1001.)

### 5. Other Relevant Medical Evidence
#### a. Dr. Donald Jason White

On January 17, 2017, Plaintiff saw Dr. Donald Jason White, at Kaiser Permanente, for a swollen jaw. (AR 1034.) Dr. White noted Plaintiff suffered from "major depressive disorder, recurrent episode, in partial remission." (AR 1035.)

### b. Dr. Rupa Lekh Nanavati

On February 3, 2017, Plaintiff saw Dr. Rupa Lekh Nanavati for memory disorder screening upon referral from Dr. Lee. (AR 1079–84.) Dr. Nanavati conducted a medical exam, found no evidence of dementia, and concluded Plaintiff suffered from "major depressive disorder, recurrent episode, in partial remission." (AR 1080) (capitalization omitted.) Dr. Nanavati suspected "chronic pain, stress at home, and depression contribute to [Plaintiff's] cognitive complaints." (AR 1080.)

### ii. Hearing Testimony

On February 1, 2017, the ALJ held a hearing on Plaintiff's appeal. (AR 102-65.)

### 1. Plaintiff Sean McAnally

Plaintiff testified that he cannot work because he is unable to concentrate and has difficulty with his memory as a result of his depression. (AR 147, 149.) Plaintiff stated, "I'm a native. Coming down I missed the five freeway. . . I used to be the encyclopedia guy." (AR 147.) Plaintiff explained that he stopped taking Lyrica because it made him "really depressed" and "massively suicidal." (AR 149, 150.) Plaintiff stated that his "kids do everything on Google to remind [him] to pick them up from school and stuff." (AR 149.) Plaintiff also testified that he is "really dependent on timers and stuff." (AR 149.)

### 2. Charles L. Cooke, M.D. (Medical Expert, "ME")

Dr. Charles L. Cooke testified after reviewing Plaintiff's medical records for possible physical and mental impairment. (AR 111–132.) The ME stated that "there is a scant degree of evidence" for Plaintiff's depression and that "it did not sound like severe depression to me." (AR 115.) The ME agreed with the ALJ's "idea that if this is an issue, then psychological or psychiatric consultation might be in order." (AR 115.)

### 3. Erin M. Welsh (Vocational Expert, "VE")

Ms. Erin M. Welsh, a vocational expert, testified that Plaintiff's past work as a business development manager, insurance salesman, and vice president of sales was "skilled" and "sedentary." (AR 153.) The ALJ asked the VE a hypothetical question about an individual of similar age, education, work history, and limitations as Plaintiff who was "limited to understanding, remembering, and carrying out simple routine, repetitive tasks with the need for standard industry breaks every two hours." (AR 157.) The VE opined that such individual could not perform Plaintiff's prior work, but that he could work as an information clerk, usher, or merchandise marker. (AR 157–58.) In response to a second question, the VE opined that no jobs exist in the national economy if "the hypothetical individual would be off task for an hour during the work day in addition to regular breaks." (AR 159.)

### iii. The ALJ's Findings

On April 19, 2017, the ALJ issued a written decision. (AR 64–75.) The ALJ determined that Plaintiff had not been under a disability from May 17, 2013, through the date of the decision. (AR 64–75.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 17, 2013. (AR 66.) At step two, the ALJ found that Plaintiff had three severe impairments: right shoulder impairment, anxiety disorder, and depressive disorder. (AR 66.) At step three, the ALJ found that Plaintiff does not have an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (AR 22.)

At step four, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) with some exceptions. (AR 69.) As to the RFC's mental component, the ALJ concluded that the "Plaintiff is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks, with standard industry work breaks every two hours." (AR 69.) The ALJ accepted the VE's testimony and found that the demands of Plaintiff's past work "exceed his [RFC]." (AR 73–74.)

At step five, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform some jobs that exist in significant numbers in the national economy, including an information clerk, usher, and merchandise marker.

(AR 74–75.) Thus, the ALJ concluded that Plaintiff has not been under a disability since May 17, 2013, through the date of the decision of April 19, 2017. (AR 75.)

## II. Legal Standards

### A. Review of the Magistrate Judge's Report & Recommendation (R&R)

The district court's duties in connection with an R&R of a magistrate judge are set forth in Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b). The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). The district court need not review *de novo* those portions of an R&R to which neither party objects. *U.S. v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). "If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law." *Campbell v. U.S. Dist. Court for N. Dist. of California*, 501 F.2d 196, 206 (9th Cir. 1974).

### B. Review of the Commissioner's Decision

A district court has jurisdiction to review final decisions of the Commissioner of Social Security. 42 U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

### C. Review for Substantial Evidence

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The "evidence must be more than a mere scintilla but not necessarily a

preponderance." *Id.* "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation" if it is "supported by inferences reasonably drawn from the record . . ." *Id.* When reviewing for substantial evidence, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Ultimately, in the absence of substantial evidence, the Court cannot uphold an ALJ's RFC determination. *Vasquez v. Comm'r of Soc. Sec.*, 2019 WL 3714565, at *4 (E.D. Cal. Aug. 7, 2019) (finding that the evidence was insufficient basis to conclude that the RFC's limitations accurately reflected the work limitations associated with the mental impairments found by the ALJ).

## III. Discussion

Plaintiff argues that the Commissioner erred because (1) Plaintiff's RFC[3] cannot be deemed based on substantial evidence without support of a medical opinion, and (2) the ALJ failed to fully and fairly develop the record to include such an opinion. (ECF No. 12.) The Commissioner contends that substantial evidence supports Plaintiff's RFC and that the ALJ was not required to develop the record further. (ECF Nos. 15, 16.) For the reasons stated below, the Court agrees with Plaintiff as to both arguments and **REMANDS** this matter for further administrative proceedings.

### A. The RFC Determination is Not Supported by Substantial Evidence Because the ALJ Acted as His Own Medical Expert.

The RFC is, in short, "the most [a Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). In making an RFC determination, an "ALJ may not act as his own medical expert as he is 'simply not qualified to interpret raw medical

---

[3] As only Plaintiff's mental RFC is being challenged, any subsequent references to Plaintiff's RFC pertain exclusively to his mental – not his physical – RFC, i.e., the ALJ's conclusion that the "Plaintiff is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks, with standard industry work breaks every two hours." (AR 69.)

10

data in functional terms.'" *Rivera v. Berryhill*, No. ED-CV-16-791-SP, 2017 WL 5054656, at *4 (C.D. Cal. Oct. 31, 2017) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") Instead, the ALJ should permit an examining physician or medical expert to evaluate the evidence. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a Plaintiff's impairments); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) ("the ALJ acted as his own medical expert . . . which is improper."); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (noting that an "ALJ is simply not qualified to interpret raw medical data").

Here, the record is devoid of any opinion by a treating or examining physician, or medical expert, that assesses how Plaintiff's mental impairment impacts his ability to work. In June 2015, for example, Dr. Magy noted that Plaintiff's "thought processes [were] circumstantial and tangential" and that his "[m]emory and concentration [were] reportedly poor," but did not translate those observations into an assessment of Plaintiff's functional limitations. (AR 273.) Likewise, across various appointments from December 2014 to June 2016, Dr. Lee found Plaintiff's symptoms consistent with "severe depression" given his PHQ-9 results, prescribed Plaintiff multiple anti-depressants, and "HIGHLY" recommended additional psychiatric treatment, but did not explain what any of that meant for Plaintiff's ability to work. (AR 435, 497–98, 536–38, 542, 553–55, 1017–24.) Other medical professionals observed Plaintiff's ongoing mental health issues from 2015 through to early 2017, but similarly stopped short of assessing how such symptoms might limit Plaintiff's mental capacity for work. (AR 96–101, 972, 976, 940, 1034–35, 1079–84.) In addition, at Plaintiff's hearing, the ME likewise did not testify as to any functional limitations resulting from Plaintiff's mental impairment, focusing instead on Plaintiff's physical conditions – e.g., carpal tunnel syndrome, shoulder surgery – and his physical RFC. (AR 116–19.) The ME offered only that Plaintiff's mental

impairment "did not sound like severe depression to [him]," and then noted that "if this is an issue, then a psychological or psychiatric consultation might be in order." (AR 115.)

In the absence of testimony from a treating or examining physician, or from the medical expert, the ALJ improperly "interpret[ed] the raw medical data" in the record contrary to established precedent. *Rivera*, 2017 WL 5054656, at *4 (citation omitted). For example, in concluding Plaintiff has moderate limitations in understanding, remembering, or applying information, the ALJ noted that Plaintiff "reported a loss of memory on various occasions" and that Plaintiff stated he "is only able to pay attention for up to 30 minutes . . ." (AR 68.) Likewise, in concluding that Plaintiff has only mild limitations in interacting with others, the ALJ contrasted descriptions of Plaintiff as isolated, anxious, and irritable with other descriptions of Plaintiff as alert, pleasant, courteous, and cooperative. (AR 68.) Also, in finding Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace, the ALJ cited to Dr. Magy's observations and to Plaintiff's own testimony that "he does not sleep well." (AR 68.) At no point did the ALJ cite to a medical opinion that concluded Plaintiff is capable only of "simple, routine, and repetitive tasks" or that Plaintiff's mental health is such that he can comply with "standard industry work breaks every two hours." (AR 68–71.)

In light of the ALJ's analysis, and the absence of a medical opinion as to Plaintiff's functional limitations, Plaintiff's mental RFC determination is evidently nothing more than the ALJ's "own exploration and assessment" of Plaintiff's impairments. *Day*, 522 F.2d at 1156; (*see* AR 69–71). This is precisely the kind of armchair football that courts regularly discourage and remand. *See, e.g.*, *Freda G. v. Saul*, No. 5:18-CV-00694-AFM, 2019 WL 2568398, at *4 (C.D. Cal. June 20, 2019) (remanding where ALJ determined an RFC in the absence of a medical opinion regarding the Plaintiff's functional limitations); *Pulido v. Berryhill*, No. 1:17-CV-0884-JLT, 2018 WL 4773109, at *7–8 (E.D. Cal. Oct. 2, 2018) (remanding and rejecting the ALJ's findings that "restriction to light work was appropriate" and that the Plaintiff could "occasionally reach overhead with the left upper extremity" where there was no medical opinion to support that);

*Wheat v. Berryhill*, No. 17-CV-02496-MMA, 2018 WL 3870055, at *3 (S.D. Cal. Aug. 14, 2018), *report and recommendation adopted*, No. 17-CV-2496-MMA, 2018 WL 4328219 (S.D. Cal. Sept. 11, 2018) (remanding on the basis that "the ALJ's statement that the mental status examinations in evidence show primarily 'mild to moderate' findings is the ALJ's own interpretation of the findings"); *Rodriguez v. Berryhill*, No. CV 16-8225-FFM, 2017 WL 8231050, at *2 (C.D. Cal. Nov. 28, 2017) (remanding where ALJ found Plaintiff could perform sedentary work based on his "interpretation of the medical evidence," and "not based on the opinion of any physician").

Consequently, this Court finds that the ALJ's RFC determination is not supported by substantial evidence. In the absence of a medical opinion interpreting the extent of Plaintiff's mental impairment, there is an insufficient basis to conclude that he is limited to "simple, routine, and repetitive tasks" or, on the other hand, that "standard industry work breaks every two hours" are sufficient to accommodate his impairment. (AR 71.)

### B. The ALJ Did Not Adequately Develop the Record.

Plaintiff also contends that the ALJ failed to fully and fairly develop the record as to Plaintiff's RFC. (ECF Nos. 12, 17.) The Commissioner responds that the ALJ assessed a generous RFC given the extremely limited treatment records. (ECF No. 15, 18.) The Court agrees with Plaintiff and remands to further develop the record.

#### i. The ALJ's Duty to Fully and Fairly Develop the Record.

An ALJ has a duty to fully and fairly develop the administrative record. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it."). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence," *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001), including when "the administrative record does not contain any opinion by a treating or examining physician regarding plaintiff's RFC . . ." *Mendoza v. Barnhart*, 436 F. Supp. 2d 1110, 1116 (C.D. Cal. 2006); *see also de Lopez v. Astrue*, 643

F. Supp. 2d 1178, 1184 (C.D. Cal. 2009) (finding ALJ failed in this duty when the record lacked an opinion by a treating or examining physician); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (same).

That duty is heightened "where the claimant may be mentally ill and thus unable to protect her own interests." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992)); *accord DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) ("In cases of mental impairments, this duty [to develop the record] is especially important."). When a heightened duty is triggered, "the ALJ should not be 'a mere umpire'" . . . but must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts . . .'" *Widmark v. Barnhart*, 454 F.3d 1063, 2006 DJDAR 9741, 9443 (9th Cir. 2006) (quoting *Higbee v. Sullivan*, 975 F.2d 558, 560 (9th Cir. 1992)). "The ALJ can satisfy this duty in a variety of ways, including 'subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.'" *Rios v. Berryhill*, No. 14-CV-00654-JCS, 2018 WL 905849, at *21 (N.D. Cal. Feb. 15, 2018) (quoting *Tonapetyan*, 242 F.3d at 1150).

Here, the ALJ concluded at step two that Plaintiff suffered from severe anxiety and depressive disorders. (AR 66.) Consequently, there is no dispute that the ALJ was subject to "heightened" duty to develop the record. *Tonapetyan*, 242 F.3d at 1150.

### ii. The Record Required Further Medical Testimony to Support the ALJ's RFC.

The Court finds that the ALJ committed error by failing to fully develop the record for multiple reasons. As a threshold issue, the ALJ determined that Plaintiff "is limited to understanding, remembering, and carrying out simple, routine, and repetitive tasks, with standard industry work breaks every two hours," (AR 69), in the absence of any opinion by a treating or examining physician delineating the functional impact of Plaintiff's mental impairment. "Without a personal medical evaluation, it is almost impossible to assess the residual functional capacity of any individual." *Penny v. Sullivan*, 2 F.3d 953,

958 (9th Cir. 1993). The ALJ may have been able to fully develop the record by ordering a psychiatric consultation regarding Plaintiff's mental RFC. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (finding that the Commissioner's decision lacked substantial evidence because the ALJ did not supplement the record with the opinion of a treating or examining physician regarding plaintiff's RFC); *de Lopez*, 643 F. Supp. 2d at 1184 (same); *Mendoza*, 436 F. Supp. 2d at 1116 (same). Alternatively, the ALJ may have adequately developed the record by obtaining additional medical source statements as to Plaintiff's mental RFC from his treating doctors. *See Lewis v. Comm'r Soc. Sec. Admin.*, 293 F. App'x 495, 496 (9th Cir. 2008) (finding ALJ had duty to request medical source statements about what the Plaintiff can still do given, as is the case here, ambiguity about the extent of the Plaintiff's impairment); 20 C.F.R. § 404.1513(a)(2) (requiring ALJ to request "statement(s) from a medical source about what [the Plaintiff] can still do despite [his] impairment(s)," including the Plaintiff's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting"). The ALJ did neither and thus erred.

The Court's conclusion finds additional support in the ALJ's own recognition that the record lacked such records and in the ME's indication that such records would be important to assessing Plaintiff's disability claim. *See Struck v. Astrue*, 247 F. App'x 84, 86 (9th Cir. 2007) (finding ALJ failed to fully develop the record, in part, because "both the ALJ and the medical expert who testified at the ALJ's request concluded that inpatient treatment records from two recent hospitalizations of Struck were important to assessing her claim."). Here, at Plaintiff's hearing, the ALJ noted the absence of medical evidence pertaining to Plaintiff's alleged mental impairment. (AR 105.) Plaintiff's counsel acknowledged that absence and received two weeks from the ALJ to complete the record, (AR 105–06), after which he submitted Exhibits 14F, (AR 1004–15), and 15F. (AR 1015–80.) In response to the ALJ's request that the ME summarize the "severe impairments" and describe "what the functional limitations are," the ME noted in

15

agreement with the ALJ that, "if [Plaintiff's depression were] an issue, then psychological or psychiatric consultation might be in order." (AR 111, 115.) Then, in his opinion, the ALJ re-affirmed the dearth of medical evidence pertaining to Plaintiff's mental impairment, noting that "the Plaintiff has had very little mental health treatment" and that the "objective signs and findings, such as mental status examination findings, are not substantial, either in degree or in frequency." (AR 71.) Consequently, rather than supplement the limited record, the ALJ relied on the already-acknowledged lack of evidence to rule against the Plaintiff, and thus abdicated its "heightened duty to develop the record" for a mentally impaired individual. *Struck*, 247 F. App'x at 86.

In addition, that the ALJ kept the post–hearing record open for two weeks so that Plaintiff could submit additional evidence of a mental impairment is insufficient to cure the ALJ's errors. (AR 105–106.) The evidence that Plaintiff submitted after the hearing, i.e., Exhibits 14F and 15F, do not include an assessment of Plaintiff's functional limitations resulting from his mental impairment. (AR 64, 1004–84.) In addition, the ALJ devoted minimal attention to that evidence in rendering an RFC, (*see* AR 68, 71), and did not re-open the hearing to present that evidence to an ME for his testimony and opinion. *See Coleman*, 2009 WL 861864, at *11 (finding that ALJ erred by not providing the medical expert with evidence submitted by the Plaintiff shortly after the hearing, and well in advance of the ALJ's opinion, so that the expert could "provide supplemental testimony" on it).

Consequently, for the foregoing reasons, the Court finds that the ALJ's failure to fully develop the record was error. The Court, moreover, reminds the ALJ that even where a Plaintiff "may have failed to seek psychiatric treatment for his mental condition . . . it is a questionable practice to chastise one with a mental impairment for the exercise

of poor judgment in seeking rehabilitation."[4] *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989)).

### C. The ALJ's Error Was Not Harmless and Requires Remand.

The Court now turns to the analysis of whether this error by the ALJ was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted). Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Molina*, 674 F.3d at 1115; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Federal courts review only the reasoning the ALJ provided and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." *Trevizo*, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." *Brown–Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation and quotation marks omitted).

The court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012) (citation omitted). In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

---

[4] The Court also notes that the ALJ's characterization of Claimant as failing to pursue medical treatment is not entirely accurate. After all, Claimant sought mental health treatment from a licensed clinical social worker in 2017 – i.e., well after the progress notes and interactions with Dr. Lee that the ALJ relies on to make that assertion. (AR 71, 96–101.) In addition, Claimant's delays in seeking treatment seem to result, in part, from his efforts to find a provider that was a good fit, and thus support an inference contrary to the ALJ's conclusion, i.e., that he *was* attempting to obtain treatment. (AR 483, 518, 525.) Lastly, Claimant's inability to seek consistent treatment may also be explained by his financial challenges. (*See, e.g.*, AR 1018 (noting that Claimant "[d]oes not want prescriptions from kaiser because he states he does not have enough money" to pay for them)).

Here, the record establishes that the ALJ's errors were not harmless. The ALJ determined Plaintiff's mental RFC without a medical opinion that defined Plaintiff's limitations, and then failed to explain what evidence supports his specific determinations that Plaintiff was limited to "simple, routine, and repetitive tasks" and could operate on "standard industry work breaks every two hours." (AR 69); *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (finding reversible error where the ALJ failed to explain how the evidence supports his RFC determination). This is of special concern here because the Vocational Expert testified that, if a person like Plaintiff were unable to focus for one hour in addition to the industry standard breaks, there would be no jobs available for him in the national economy, and it is not clear how Plaintiff's mental impairments limit his ability to work. (AR 115.) A medical opinion as to Plaintiff's mental RFC, moreover, would receive substantial weight such that it might alter the ALJ's RFC determination. *See* 20 C.F.R. § 404.1527(c)(2). ("If . . . a treating source's medical opinion on the issue(s) of the nature and severity . . . is well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight."). And, the ALJ could have easily sought one out, either by ordering a consultative examination or obtaining medical source statements from Plaintiff's doctors. Consequently, neither the ALJ's impermissible review of the evidence, nor his failure to fully and fairly develop the record, are harmless.

In addition, in light of the record, the Court finds that remand is appropriate. Doing so will give the ALJ an opportunity to reconsider his impermissible review of the evidence and supplement the record as discussed above.

**IV. Conclusion**

Based on the foregoing review of the relevant law and the administrative record, the Court **ADOPTS** the R&R, **GRANTS** Plaintiff's motion for summary judgment, and **DENIES** Defendant's cross–motion for summary judgment. (ECF Nos. 12, 15, 20.) The

Court **REMANDS** this matter to the Commissioner of the Social Security Administration for further administrative proceedings.

**IT IS SO ORDERED.**

Dated: March 24, 2020

Hon. Gonzalo P. Curiel
United States District Judge